UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SERVICE EMPLOYEES INTERNATIONAL, INC., and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, | § § § § § | |
| Petitioners, | § § | |
| v. | § § | CIVIL ACTION NO. H-09-2878 |
| DIMENSIONS INTERNATIONAL, ACE AMERICAN INSURANCE COMPANY, JASON HOLGUIN, and DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, | § § § § § § § § | |
| Respondents. | § | |

**MEMORANDUM AND ORDER**

Pending before the Court are the appeal filed by Service Employees International, Inc. ("SEII") and The Insurance Company of the State of Pennsylvania (collectively, "Petitioners") (Doc. No. 1), and the motion to dismiss petition for lack of subject matter jurisdiction filed by the Director, Office of Workers' Compensation Programs, U.S. Department of Labor (the "Director") (Doc. No. 22). Upon considering the appeal and motion, all responses thereto, and the applicable law, the Court finds that Petitioners' appeal must be dismissed without prejudice and the Director's motion must be granted.

I.  BACKGROUND

This is an appeal from a decision of the U.S. Department of Labor Benefits Review Board (the "Board"), arising under the Longshore and Harbor Workers' Compensation Act

1

("LHWCA"), 33 U.S.C. § 901, *et seq.*, as extended by the Defense Base Act ("DBA"), 42 U.S.C. § 1651, *et seq.*, awarding workers' compensation benefits to Claimant Jason Holguin.

### A. Factual Background[1]

Holguin is a licensed plumber with work experience in plumbing, pipefitting, and construction. (Decision and Order Awarding Benefits, June 9, 2008 ("ALJ Order"), at 4.) He began working for Respondent Dimensions International ("Dimensions") on February 11, 2005. Dimensions assigned Holguin to re-armor vehicles in Iraq and to install heavy doors, glass, new seating, and a/c units in the vehicles. (*Id.*) In September 2005, Holguin hurt his back while in the process of installing an armored plate on a vehicle. (*Id.*)

After his injury, Holguin was sent back to the United States, where he received treatment for the severe lower back pain he experienced as a result of the back injury. (*Id.*) Dimensions referred Holguin to several doctors and medical professionals. One physician, Dr. Chapman, diagnosed Holguin as having a disrupted disc and recommended that he undergo a lumbar discogram in order to determine whether he was a candidate for disc replacement and spinal fusion surgery. (*Id.* at 7, 8.) Dimensions sent Holguin to another physician, Dr. McCaskill, for a second opinion. Dr. McCaskill did not believe that Holguin needed surgery or a lumbar discogram and instead recommended additional physical therapy and medication. (*Id.* at 5 n.5.) After receiving Dr. McCaskill's report, Dimensions refused to authorize a discogram. (*Id.* at 5.)

---

[1] On appeal, the factual findings of the Administrative Law Judge ("ALJ") must be accepted unless they are not supported by substantial evidence in the record considered as a whole or unless they are irrational. *Mijangos v. Avondale Shipyards*, 948 F.2d 941, 944 (5th Cir. 1991); *see also* 33 U.S.C. § 921(b)(3). In considering a motion to dismiss for lack of subject matter jurisdiction, the Court may "evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts," but "must accept all factual allegations in the plaintiff's complaint as true." *Den Norske Stats Oljeselskap As v. Heeremac V.O.F.*, 241 F.3d 420, 424 (5th Cir. 2001). Thus, the Court pulls relevant factual findings from the ALJ decision dated June 9, 2008 and the procedural history from both the ALJ decision and the Board decision dated April 16, 2009.

2

To this day, Dimensions has never authorized a discogram or diagnostic treatment in order to determine whether Holguin should receive spinal surgery. (*Id.* at 8.)

In fall 2006, Dimensions began sending letters to Holguin "suggesting" that he seek work. (*Id.* at 5, 6.) Though Holguin never stopped experiencing pain from his back injury, he followed Dimensions' suggestion and sent his resume to Kellogg, Brown & Root ("KBR"), of which SEII is a part. (*Id.* at 2, 5.) In order to obtain the medical clearance to return to work, Holguin underwent a functional capacity evaluation ("FCE") administered by Dr. Chapman. (*Id.* at 5.) Dr. Chapman released Holguin to work despite Holguin's report of ongoing pain. Holguin subsequently passed a physical exam performed by SEII and was released to work. (*Id.*)

In June 2007, Holguin was sent by SEII to Bagram Air Base in Afghanistan. (*Id.*) By the time he reached Afghanistan, Holguin was stiff and sore from the flight. (*Id.*) He spent the next two days after his arrival attending meetings or resting. (*Id.*) He slept on cots and walked over uneven ground. (*Id.* at 7.) On his third day in Afghanistan, June 23, 2007, Holguin was assigned to use a pipe-threading machine. (*Id.* at 5.) He picked up a 10- to 12-foot section of pipe and began threading the pipe through the machine. (*Id.* at 5-6.) While bending over the machine to thread the pipe, Holguin experienced increasing back pain until he could no longer continue work. (*Id.* at 6.) Holguin described the pain as the same as "when he first injured it in September 2005 when working for Dimensions." (*Id.*) He ceased work, went to SEII's medical treatment area, and then returned to his quarters. (*Id.*)

SEII sent Holguin back to the United States soon thereafter. Holguin received treatment from Dr. Chapman twice after his return to the United States. (*Id.* at 6-7.) At the time of his ALJ hearing in February 2008, Holguin continued to be unable to work and had not be released to work by Dr. Chapman. (*Id.* at 6.)

## B. Procedural Background

Holguin filed a claim for benefits under the LHWCA and DBA against both his employer SEII and its insurance carrier Insurance Company of the State of Pennsylvania, and his employer Dimensions and its carrier Ace American Insurance Company ("Ace"). (*Id.* at 2.) The Administrative Law Judge ("ALJ") held a hearing on February 12, 2008 in Houston, Texas regarding Holguin's claim. (*Id.*) At the hearing, the parties stipulated to certain issues, including, among others: (1) Holguin was injured while working for Dimensions on September 4, 2005 and was involved in a subsequent incident while working for SEII on June 23, 2007; and (2) Dimensions paid Holguin temporary total disability benefits from October 1, 2005 to July 13, 2007 at the rate of $1,047.16 per week in connection with the September 4, 2005 injury. (*Id.* at 3.) The issues presented for the ALJ's review included, among others, the last responsible employer/carrier who bore responsibility for Holguin's injury, causation, the nature and extent of Holguin's disability, Holguin's entitlement to medical benefits, and Holguin's average weekly wage. (*Id.* at 3-4.)

On June 9, 2008, the ALJ issued his decision. Among the findings of fact and conclusions of law, the ALJ determined that Holguin was entitled to medical benefits, found that Dimensions and its carrier Ace were the last responsible employer/carrier, and awarded Holguin, among other benefits, temporary total disability compensation pursuant to LHWCA § 908(b). The ALJ's "last responsible employer/carrier" finding was based on an application of the "two injury rule." The ALJ found that Holguin's June 23, 2007 incident, while working for SEII, did not constitute a new injury or an aggravation of the September 4, 2005 injury, incurred while working for Dimensions, but rather a "natural progression" of the September 4, 2005 injury. (*Id.* at 13-14.)

As such, the June 23, 2007 incident did not constitute a new injury for which SEII (the employer for whom Holguin was working at the time of the incident) would assume full liability. (*Id.* at 13.)

Dimensions and Ace appealed the ALJ's order to the Benefit Review Board and requested review of two issues: (1) whether the ALJ erred in his determination that Holguin's June 23, 2007 incident did not constitute an aggravation/exacerbation of his September 4, 2005 injury, and that SEII and its carrier was not the last responsible employer/carrier; and (2) whether the ALJ erred in determining that Dimensions/Ace was responsible for payment of temporary total disability compensation benefits to Holguin during the portion of time that Holguin was employed by SEII. (Pet. for Review at 2, Doc. No. 26, Exh. A.)

In its decision and order, the Board reversed the ALJ's determination that the June 23, 2007 did not constitute an aggravation of the September 4, 2005 injury. (Decision and Order of Benefits Review Board, Apr. 16, 2009 ("Board Order"), at 7.) Consequently, the Board reversed the ALJ's conclusion that Dimensions/Ace was the last responsible employer/carrier and liable for Holguin's disability and medical benefits. (*Id.* at 7-8.) The Board held that SEII was "liable for the disability benefits due [Holguin] commencing June 23, 2007, as a matter of law." (*Id.* at 8.) The Board remanded the case to the ALJ to address any "unresolved issues" as a result of the Board's holding, "such as the applicable average weekly wage." (*Id.*) As for the second issue, the Board found that the ALJ had not addressed whether Dimensions/Ace should be liable for temporary total disability benefits during the period in which Holguin was employed by SEII. (*Id.*) The Board vacated the ALJ's award of benefits to Holguin from Dimensions/Ace during this period and remanded the issue to the ALJ for consideration of this issue. The Board noted

that, as a result of its holding that SEII was the last responsible employer, Dimensions/Ace could only *potentially* be liable for benefits corresponding to the period of June 20 to 22, 2007. (*Id.*)

SEII and its carrier filed a motion for reconsideration with the Board, which was denied. (Doc. No. 1, Exh. 2.) The instant appeal followed. The sole issued presented for our review is whether the Board erred in reversing the ALJ's finding that Dimensions/Ace was the last responsible employer/carrier. (Doc. No. 17 at 3.) The Director, after being granted leave to appear in this case, filed the pending motion to dismiss for lack of subject matter jurisdiction.

## II. SUBJECT MATTER JURISDICTION

The court must dismiss a case when the petitioner fails to establish subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "It is incumbent on all federal courts to dismiss an action whenever it appears that subject matter jurisdiction is lacking." *Stockman v. Federal Election Com'n*, 138 F.3d 144, 151 (5th Cir. 1998). A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (internal quotation marks and citation omitted). The burden of establishing federal jurisdiction rests on the party seeking the federal forum. *Stockman*, 138 F.3d at 151.

The Director has moved this Court to dismiss Petitioner's appeal for want of jurisdiction, arguing that this Court lacks jurisdiction because the Board's order was not a final order. Petitioners' respond by arguing that the single issue presented on appeal to our Court—the determination of the last responsible employer/carrier—was not remanded by the Board to the ALJ for further findings. Therefore, according to Petitioners, the Board's order regarding this issue is final and our Court possesses jurisdiction over this issue.

As an initial matter, we must address Petitioners' objection to the Director's motion to dismiss on the basis of subject matter jurisdiction as untimely. Federal courts are courts of limited jurisdiction and possess an independent obligation to examine the basis of jurisdiction. *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1102 (5th Cir. 1981). A court must dismiss an action if it determines "at any time" that it lacks subject-matter jurisdiction. FED. R. CIV. P. 12(h)(3). Challenges to subject matter jurisdiction can be raised at any time or even *sua sponte* by the court. *Johnston v. United States*, 85 F.3d 217, 218 n.2 (5th Cir. 1996). Thus, the timeliness of the Director's motion to dismiss is irrelevant and the Court will proceed to examine the merits of the Director's motion.

We turn to the heart of the jurisdictional issue—whether the Board's order is "final" within the meaning of the LHWCA and DBA. If it is final, our Court possesses the appellate jurisdiction to review the Board's order. If not, we must dismiss the appeal for lack of subject matter jurisdiction.

The LHWCA, which mandates workers' compensation for death and disability resulting from injuries incurred on the United States' navigable waters, is extended by the DBA to cover certain employment relationships outside the United States. *See* 33 U.S.C. § 903(a); 42 U.S.C. § 1651(a). The provisions of the LHWCA apply to claims brought under the DBA, except to the extent that the DBA specifically modifies the LHWCA's provisions. 42 U.S.C. § 1651(a). For example, the LHWCA provides for judicial review of Board orders by circuit courts of appeal. 33 U.S.C. § 921(c). However, the DBA provides for judicial review of Board orders by district courts. 42 U.S.C. § 1653(b). The Fifth Circuit has held that the LHWCA's provision for circuit court review is one that is specifically modified by DBA § 1653(b). *See AFIA/CIGNA*

*Worldwide v. Felkner*, 930 F.2d 1111 (5th Cir. 1991). Therefore, judicial review of claims brought under the DBA must begin in the district courts. *Id.* at 1116.

One of the LHWCA provisions left unmodified by the DBA, however, is the requirement of finality of the Board's order as a prerequisite to judicial review. Section 921(c) of the LHWCA states:

> Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order . . . by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court, to the Board, and to the other parties, and thereupon the Board shall file in the court the record in the proceedings as provided in section 2112 of title 28, United States Code. Upon such filing, the court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board and enforcing same to the extent that such order is affirmed or modified.

33 U.S.C. § 921(c). The test for finality is a decision "that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Newpark Shipbuilding & Repair, Inc. v. Roundtree*, 723 F.2d 399, 401 (5th Cir. 1984) (en banc), *cert. denied*, 469 U.S. 818 (1984) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)). The rule is intended to "avoid piecemeal trial and appellate litigation and the delays and costs of multiple appeals upon both parties and courts . . . ." *Newpark Shipbuilding*, 723 F.2d at 401. A Board order that "determines liability but which remands to the administrative law judge to determine the award, is not a reviewable '*final* order' of the Board under § 921(c)." *Id.* at 404.

Here, the Board's order determined SEII's liability for Holguin's injury as a matter of law, but remanded the case to the ALJ for determination of Holguin's average weekly wage. In addition, the Board vacated the award against Dimensions/Ace for disability benefits corresponding to a period in which Holguin was employed by SEII and specifically directed the ALJ to consider Dimensions/Ace liability for payment during this period of time. It can hardly be said that the Board's order was final—though it determined SEII's liability, it left open the issue of the appropriate award amount. Moreover, the Board's order did not conclusively determine Dimensions/Ace's liability since it directed the ALJ to consider various factors that the ALJ did not appear to have considered when previously finding Dimension/Ace liable for payment during the period that Holguin was employed by SEII. An order of this type—remanding the case to the ALJ for further findings of liability and damages—is not final. *See Newpark Shipbuilding*, 723 F.2d at 404 (a Board order that remanded the case for "redetermination of the claimant's average weekly wage" was not final for purposes of judicial review); *see also Thompson v. Paducah Marine Ways*, 897 F.2d 530 (6th Cir. 1990) (same); *Jacksonville Shipyards, Inc. v. Estate of Verderane*, 729 F.2d 726, 727 (11th Cir. 1984) (per curiam) (Section "921(c) requires the Board's order to be final and does not provide for review of a Board order that remands the case to an ALJ for further findings on a claimant's award of benefits.").

We cannot accept Petitioners' argument that the Board order is final for purposes of appeal because the sole issue presented on appeal to our Court—the determination of the last responsible employer/carrier—was not an issue that was remanded to the ALJ for further findings. The Court has been unable to find, and the Petitioners have not presented, any case in which a court found that it possessed jurisdiction in such a situation. Rather, even if our Court reached the merits of the instant appeal, the Petitioners or Dimensions/Ace could once again

9

appeal the ALJ's decision regarding Dimensions/Ace's liability for disability payment during that period of time corresponding to Holguin's employment with SEII. This type of piecemeal trial and appellate litigation is what the "finality" rule is intended to avoid. "Interrupting the administrative process to review a portion of the Board's decision would be contrary to the purpose of section 921(c)." *Wash. Metro. Area Transit Auth. v. Dir., Office of Workers' Comp. Programs*, 824 F.2d 94, 96 (D.C. Cir. 1987). Ultimately, Holguin's claim, despite being split into various issues on appeal before the Board and our Court, "is, in practical effect, a single controversy." *Newpark Shipbuilding*, 723 F.2d at 401 (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974)). Once the ALJ has entered his second order in this case, the parties may subsequently appeal not only the Board's affirmance of the ALJ's second order—which would then be a final order—but also the propriety of the Board's April 16, 2009 remand order to the ALJ. *Mijangos v. Avondale Shipyards*, 948 F.2d 941 (5th Cir. 1991).

    The Court concludes that it does not possess subject matter jurisdiction over the Board's April 16, 2009 order. The Board's order was not final because it did not end the litigation on the merits, but left issues open for the ALJ's further determination.

    The Court is not insensitive to the understandable concerns of anyone in the position of an injured worker seeking redress and closure as to an injury or injuries that had such a devastating impact on his career. This Court's decision necessarily means that this medical and legal saga, now almost six years long, must continue. Nonetheless, the law is clear and the Court's duty admits of no discretion.

## III. CONCLUSION

Petitioners' appeal (Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE**. The Director's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. No. 22) is **GRANTED**.

**IT IS SO ORDERED.**

**SIGNED** this 13the day of December, 2010.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE